United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re: <br><br> Sebastien Ghiles, <br><br> Debtor. | |
| Sebastien Ghiles, <br><br> Plaintiff <br><br> v. <br><br> U.S. Bank National Association as Trustee for Lehman Brothers Small Balance Commercial Mortgage Pass-Through Series Certificates Series 2007-3, <br><br> Interbay Funding LLC, <br><br> Ocwen Loan Servicing, LLC <br><br> Defendants. | Bankruptcy No. 14-bk-15311 <br><br> Chapter 13 <br><br> Adversary No. 14-ap-731 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON VALUATION**

Debtor-Plaintiff Sebastien Ghiles ("Ghiles") filed for Chapter 13 bankruptcy on April 23, 2015. He owns an eight-unit apartment building in Chicago Heights, Illinois, ("the building") which is encumbered by a mortgage in favor of U.S. Bank National Association ("US Bank"),[1] which is undersecured. Accordingly, Ghiles seeks to strip down the lien to value under § 506(a) of the Bankruptcy Code, which allows an undersecured claim to be bifurcated into secured and unsecured claims.. The only dispute is as to the value of the apartment building. Ghiles asserts that the building is worth $101,000 and US Bank asserts that it is worth $200,000. Trial was held on April 20, 2015. Both parties introduced appraisals into evidence, and both appraisers were

---

[1] Ocwen Loan Servicing, LLC appeared by the same counsel as US Bank, and filed an identical answer. For convenience, they will be referred to collectively as US Bank.

admitted as expert witnesses. After trial, parties submitted argument in writing. The court now makes and enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Ghiles filed a petition for relief under Chapter 13 of the Bankruptcy Code on April 23, 2014.

2. US Bank is the successor assignee of the original mortgage. Ocwen Loan Servicing LLC is the servicer.

3. The building is commonly known as 474 West 14th Place, Chicago Heights, Illinois, having tax PINs of: 31-19-404-009-0000 32-19-202-010-0000 and legally described as:

> THE NORTH 1/2 OF LOT 90 (EXCEPT THE EAST 40 FEET THEREOF) IN HILLTOP LAND COMPANY SUBDIVISION IN SECTION 19, TOWNSHIP 35 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

4. The building is Ghiles's income property.

5. Ghiles is indebted to US Bank, which holds a mortgage and security agreements against the building and fixtures in the amount of $240,000.

6. Ghiles purchased the building on August 19, 2003 by a warranty deed, and has since transferred the property to his limited liability company, Chicago Heights Fair Housing Apartments, LLC. Ghiles is the sole member of the LLC. Ghiles is solely liable for the debt.

7. Ghiles's appraisal conducted by Glenn Wierzbicki, a certified general appraiser and Deron Strickland, a certified residential appraiser.

8. US Bank's appraisal was conducted by Allstate Appraisal LP, with Paul Foxgrover, a certified general appraiser and Steven Albert, a certified general appraiser.

Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer a proceeding to a bankruptcy judge under 28 U.S.C. § 157, and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K). It seeks to determine the extent of a lien under § 506(a) of the Bankruptcy Code. Therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### THE APPRAISALS

Both appraisers pursued both the sales comparison approach and the income approach. They also came to vastly different conclusions. US Bank's appraiser concluded that the building was worth $200,000. Ghiles's appraiser concluded the building was worth $100,000.

Comparable properties were difficult to find. The Ghiles's comparables were located ten miles away and several suburbs away, making their value as comparables shaky best. US Bank's comparables are for newer buildings in better condition which might command higher rents, therefore were of doubtful value. Thus, the income approach is more useful.

As explained below, US Bank's income approach is better developed. The first step of US Bank's appraiser's income approach is the estimate of rent. Currently there is a one-bedroom renting for $600 per month, two Section 8 rentals at $650 per month, three units rented for $675 per month, one vacant unit, and one owner occupied unit. The appraiser "stabilized" the rent at $625 for the one-bedroom, and $700 for the two-bedrooms. There is no reasoned explanation for the higher stabilized rent. Instead, to

3

calculate the annual rental income we should use the rents currently charged as reflecting the market rent. Calculating using current rents, and imputing market rent on the owner-occupied unit yields the following:

| | | | | |
|---|---|---|---|---|
| One-bedroom | 600 | | 600 | per month |
| Section 8 two-bedrooms | 650 | × 2 | 1300 | per month |
| Market two-bedrooms | 675 | × 5 | 3375 | per month |
| | | | 5275 | per month |
| Months | | | × 12 | |
| | | | $63,300 | per year |

Next, the income approach adjusts the annual rent figure with the vacancy loss rate of 15%. That is, 15% of the income would be lost to being unable to keep all units occupied. Next, reasonable annual expenses were calculated at $22,796. US Bank's expert testified that the $31,009 was an estimate based on typical costs for an apartment building, including taxes, insurance, utilities, management fees, and repairs. Thus, the annual net operating income are calculated as $63,300 \times .85 - 31,009 = \$22,796$.

Next, the capitalization rate was calculated using comparable sales. The Bank's appraiser compiled a list of comparable sales and the capitalization ratios, and calculated an average capitalization rate of 12.41%. Then he "estimated" a capitalization rate of 12% without reasoned explanation of why he chose 12% instead of 12.41%. Using the average comparable capitalization rate of 12.41% gives: $\$22,796 \div 12.41\% = \$183,690$.

Ghiles's appraiser also developed the income approach. However, he concluded that 35% was an appropriate capitalization rate. There was no good explanation for why such a high capitalization rate should be chosen. If that were an appropriate capitalization rate, a cash buyer could buy a rental property and get a return of 35% on her money, even after adjusting for vacancies and typical expenses. At any time, that would be an extraordinary return. Accordingly, Ghiles's appraiser's income approach will be rejected as not credible.

4

## CONCLUSION

For the foregoing reasons, the value of the property is $183,690. US Bank is entitled to a secured claim of $183,690, and an unsecured claim as to the rest of its claim. A separate judgment will enter.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 26th day of June, 2015

## Certificate of Service

I, James Liu, certify that on June 26, 2015, I caused to be served copies of the foregoing document to the following on the attached service list by electronic service through the Court's CM/ECF system or regular U.S. mail:

Law Clerk

## Electronic Service through CM/ECF System

Glenda Gray on behalf of Sebastien Ghiles
ladylawgray@aol.com

Phillip A Pluister on behalf of Ocwen Loan Servicing, LLC and U.S. Bank National Association
pluister@bcclegal.com

Michael Dimand on behalf of U.S. Bank National Association
mdimand@aol.com